734 So.2d 933 (1999)
Shane LITTLE
v.
AMOCO PRODUCTION COMPANY, Frank's Casing Crew and Rental Tools, Inc., Reliable Well Control, Inc., and Reliable Service Productions, Inc.
No. 98 CA 1130.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*934 Edwin G. Preis, Jennifer E. Beyer, Lafayette, for Appellees Frank's Casing Crew and Rental Tools, Inc.
David A. Bowling, Susannah R. Cooley, New Orleans, for Appellant Shane Little.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
Appellant, Shane Little, seeks reversal of the trial court's grant of summary judgment in favor of appellee, Frank's Casing Crew and Rental Tool, Inc., finding that appellant's failure to meet the definition of "seaman" under the Jones Act, 46 U.S.C.App. § 688, entitled appellee to judgment as a matter of law and dismissal of all claims brought against it. For the reasons below, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 16, 1995, Shane Little was injured while working as part of a casing crew aboard the spud barge Suard 50. This crew was pulling casing onto a truck rig. The truck rig was owned by Reliable Service Production, Inc., ("Reliable"), which was conducting operations under contract to Amoco Production Company ("Amoco"). Amoco secured the barge and assigned its supervisory personnel to oversee the entire operations.
Appellant was injured when, after being briefly asked to operate the tongs aboard the barge, the tongs recoiled and struck him. Appellant was knocked more than eighteen feet to the barge deck. He sustained several serious injuries that were not tended to immediately.
At the time of the accident, appellant had been a Frank's Casing Crew and Rental Tools Inc. ("Franks") employee for three weeks. During that time, he worked as a member of two work crews. Including the job assignment at the time of the accident, appellant was given five work assignments. Four of the five assignments involved work on several vessels: (1) a self-propelled jack-up rig, (2) a moveable drilling barge, (3) a self-propelled and semi-submersible mobile offshore drilling unit ("Modu"), and (4) a spud barge, respectively. The combined work time of appellant's assignments is forty-three hours.[1] None of the vessels was owned or operated by Franks.
On August 29, 1996, appellant filed a petition seeking damages from Franks, Amoco, and Reliable, alleging that Franks was liable for negligence under the Jones Act, 46 U.S.C.App. § 688, while Amoco and Reliable were alleged to be liable under the theory of respondeat superior. Alternatively, the petition alleged liability under the Longshore and Harbor Workers Act, 33 U.S.C. § 902, which bars recovery from Franks but maintains his claims against Reliable and Amoco.
Franks moved for summary judgment of appellant's claims against it, alleging that, as a matter of law, appellant was not a "seaman" entitled to recover damages under the Jones Act. The trial court heard arguments on Franks' motion for summary judgment on January 30, 1998, despite appellant's claim that further discovery was necessary. The trial court granted summary judgment in favor of Franks on February 18, 1998, dismissing all of appellant's claims against Franks. In a written judgment, the court reasoned that appellant had no substantial connection with either a single vessel or with an identifiable fleet of vessels having common ownership or control *935 as required in Harbor Tug and Barge Company vs. Papai, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).
Appellant has assigned several errors in the trial court's grant of summary judgment in favor of appellee.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). When reviewing the record de novo, the court re-determines the facts from the entire record, giving no deference to the trial court's findings, and renders a judgment on the merits. See Cott Index Company v. Jagneaux, 96-860, pp. 3-4 (La.App. 3rd Cir.12/26/96); 685 So.2d 656, writ denied, 97-0254 (La.3/21/97); 691 So.2d 85 (quoting Ducote v. City of Alexandria, 95-1269, p. 2 (La. App. 2nd Cir.7/17/96); 677 So.2d 1118, 1120).
There is no longer a presumption against the granting of summary judgment. See 1996 La. Act., 1st Ex.Sess. No. 9; Hayes v. Autin, 96-287, p. 6 (La.App. 3rd Cir.12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. Any party may move for summary judgment in his favor for all or part of the relief for which he has prayed. La. C.C.P. art. 966(A)(1). The mover has the burden of demonstrating that there is no genuine issue as to material fact, entitling it to judgment as a matter of law. La. C.C.P. art. 966(C)(1); Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991). Where the movant will not bear the burden of proof at trial on the matter presented on a motion for summary judgment, movant's burden is to demonstrate an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. La. C.C.P. art. 966(C)(2).

Jones Act
The Jones Act, 46 U.S.C.App. § 688, provides in part, that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law." This statute was enacted with the purpose of removing the bar to a seaman's ability to recover damages in suits alleging negligence. Chandris, Inc. v. Latsis, 515 U.S. 347, 354, 115 S.Ct. 2172, 2182, 132 L.Ed.2d 314 (1995).
While the Jones Act only applies to seaman, it does not define the term. In noting the general contours of a definition, courts have noted that:
[t]raditional seamen's remedies ... have been `universally recognized as ... growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected.'
Chandris, 515 U.S. at 355, 115 S.Ct. 2172 (citation omitted). McDermott International, Inc. v. Wilander, 498 U.S. 337, 354, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991) (quoting Seas Shipping Co. v. Sieracki, 328 U.S. 85, 104, 66 S.Ct. 872, 882, 90 L.Ed. 1099 (1946)). Further, in light of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 902(3)(G), courts have noted Congress' clear intent to differentiate between those whose duties take them to sea and those with land-based duties. Chandris, 515 U.S. at 355-356, 115 S.Ct. 2172. Landbased persons have no claim under the Jones Act. Wilander, 498 U.S. at 347, 111 S.Ct. 807.

Definition of Seaman
The seminal test for seaman status under the Jones Act is provided in Offshore *936 Company v. Robison, 266 F.2d 769 (5th Cir.1959). This test provides that:
... there is an evidentiary basis for a Jones Act case to go to the jury; (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
Id. at 779 (footnote omitted). This test was modified to allow seaman status for those workers having the necessary connection with an "identifiable fleet" of vessels, a group of vessels under common ownership or control. Chandris, 515 U.S. at 366-367, 115 S.Ct. 2172. Braniff v. Jackson Avenue-Gretna Ferry, Inc., 280 F.2d 523, 528 (1960). As jurisprudence developed under the Robison test, courts focused upon the temporal relationship with a vessel or fleet of vessels, both as to nature and duration. Chandris, 515 U.S. at 366, 115 S.Ct. 2172; see also, Palmer v. Fayard Moving & and Transportation Corporation, 930 F.2d 437, 438-439 (5th Cir.1991); Lormand v. Superior Oil Company, 845 F.2d 536, 539 (5th Cir.1987), cert. denied, 484 U.S. 1031, 108 S.Ct. 739, 98 L.Ed.2d 774 (1988); Barrett v. Chevron, USA, Inc., 781 F.2d 1067, 1072-1075 (5th. Cir.1986); Longmire v. Sea Drilling Corporation, 610 F.2d 1342, 1345 (5th Cir. 1980).
In recognition of this developing jurisprudence, the Supreme Court has restated the test for seaman status under the Jones Act, while adhering to the jurisprudence developed after Robison. First, an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. Chandris, 515 U.S. at 368, 115 S.Ct. 2172; Wilander, 498 U.S. at 355, 111 S.Ct. 807. Secondly, a seaman must have a connection to a vessel in navigation, or to an identifiable group of vessels, which is substantial in terms of both its duration and time. Chandris, 515 U.S. at 368, 115 S.Ct. 2172; Wilander, 498 U.S. at 354-355, 111 S.Ct. 807.
The first prong of this test is a broad requirement which merely makes a large number of persons eligible for seaman status. In clarifying this requirement, the Court held in Wilander that the Jones Act can extend protection to land-based workers whose jobs are not related to actual transportation of a vessel, where those duties were related to the work of the ship. Wilander, 498 U.S. at 354, 111 S.Ct. 807; see also, Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). In holding that this prong is employment-related, the Court noted that it meets the need to have some type of clear standard which prevented employees' status from changing solely because of where they were working at a particular time. Wilander, 498 U.S. at 355, 111 S.Ct. 807.
Further, Chandris clarified that workers must still perform a significant portion of their duties for a vessel or group of vessels. The Court notes in Chandris that, where an employee's duties may be performed on either land or water, many courts often applied this rule by examining an employee's time spent aboard a ship, whether in a harbor or on the open seas. Chandris, 515 U.S. at 370-371, 115 S.Ct. 2172. Finding that no courts have found seaman status where an employee performed less than thirty percent of his work aboard a vessel, the Court held that thirty percent may be used a guideline in examining whether an employee is a seaman. Chandris, 515 U.S. at 371, 115 S.Ct. 2172; Palmer, 930 F.2d at 437; Lormand, 845 F.2d at 536.
It is important to keep this "thirty percent guide" in proper context. We note that this guideline does not create a *937 bright-line rule. In fact, the Court explained that, "[t]his figure, of course, serves as no more than a guideline ... and departure from it will certainly be justified in appropriate cases." Chandris, 515 U.S. at 371, 115 S.Ct. 2172. Further, it seems especially important to note that the Court discussed this guideline in the context of examining the status of a worker whose duties involved work on land as well as actually working aboard a vessel or fleet of vessels owned by his or her employer. See generally, id. at 347 (involving a superintendent engineer, whose duties involved working ashore and taking voyages, servicing a fleet of six passenger ships owned by employer). This guideline was not examined in the context of determining whether anyone, especially land-based workers not assigned to a particular ship or fleet of ships, becomes protected by the Jones Act simply because he or she may have worked on any ship for thirty percent during his or her employment.
In Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 560, 117 S.Ct. 1535, 1542-43, 137 L.Ed.2d 800 (1997), the Court stressed that, while its recent examinations of seaman status had focused upon the question of requisite duration and nature of a worker's duties, the requirement of a substantial connection to a vessel or group of vessels was never modified. In fact, the Court had noted in Chandris that, "[a]lthough the traditional test requires a `more or less permanent connection' and the Robison formulation calls for `substantial' work aboard a vessel, `this general requirement' varies little, if at all, from one jurisdiction to another." Chandris, 515 U.S. at 367, 115 S.Ct. 2172. Accordingly, the Court reversed the lower court's determination that seaman status turned on whether an individual's relationship with a vessel or an identifiable group of vessels was a "significant," rather than permanent, one.[2]Id.
This second factor, noted the Court, ensures that a seaman does more than merely perform duties that contribute to a vessel's work. Id. at 369. Such duties must be performed for such duration and time that they create a substantial connection to a vessel or an identifiable fleet of vessels. Papai, 520 U.S. at 555, 117 S.Ct. 1535. Further, the second prong also fulfills the purpose of preventing an employee from shifting within and without the class of persons protected by the Jones Act, based upon where he or she is performing a particular job duty at the time of an injury. Id. As the Court had explained earlier, in Chandris, "a worker is no longer considered to be a seaman simply because he is doing a seaman's work at the time of the injury. Seaman status is not coextensive with seaman's risk." Chandris, 515 U.S. at 361, 115 S.Ct. 2172. Thus, because the worker in Papai was not assigned to the vessel on which he was injured, and the union hall through which he received his assignments did not exercise ownership or control over the group of vessels on which he previously worked, he could not be a seaman under the Jones Act. Papai, 520 U.S. at 558-560, 117 S.Ct. 1535.
The Court has determined that, in limited instances, an employee's status under the Jones Act may shift during the performance of his or her regular duties. Such a change may occur only when an employee is given a new assignment which changes his or her essential duties. Chandris, 515 U.S. at 372, 115 S.Ct. 2172. In such circumstances, a worker who previously did *938 not meet the Jones Act definition of a seaman may become a seaman protected by the Jones Act. Id.
We do note that the Louisiana Supreme Court has recently addressed the "substantial connection" requirement in Wisner v. Professional Divers of New Orleans, 98-1755 (La.3/2/99); 731 So.2d 200. At first glance, this opinion may appear to completely reject a permanent assignment requirement. However, we do not find so.
First, appellant's argument notwithstanding, the Supreme Court's interpretations are controlling in matters of federal law. Further, we find that, rather than rejecting the permanent assignment requirement, Wisner follows a well-established exception that has been created for certain types of employees.
At issue in Wisner was the seaman status of a commercial diver whose employer did not own or control a vessel or fleet of vessels. Wisner, 98-1755 at 2; 731 So.2d at 200. This diver worked from both fixed platforms and vessels. Id. Besides having a job which could only be performed in the water, he also slept and ate aboard the vessels from which he was diving. Id.
In addressing the substantial connection issue, the court noted that, in some instances, an employer's chartering arrangement, or lack of ownership or control over a fleet of vessels should not control a worker's seaman status. Id. at 3; 731 So.2d 200(citing Burns v. Commercial Testing and Engineering Company, 736 F.2d 307, 312 (5th Cir.1984); Wallace v. Oceaneering International, 727 F.2d 427 (5th Cir.1984); Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240, 245 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984)). Bertrand, the court noted, held that "Jones Act coverage should not be withheld because the vessels are not under the employer's common ownership or control, when claimants are continuously subjected to the perils of the sea and engaged in classical seaman's work." Wisner, 98-1755, at 3; 731 So.2d at 200; Bertrand, 700 F.2d at 245. As such, the court notes that:
[w]ith these principles in mind, the Wallace court found a commercial diver, who was employed with a diving service contractor for only several days at the time of his accident, to be a seaman. The court specifically held:
A diver's work necessarily involves exposure to numerous marine perils, and is inherently maritime because it cannot be done on land. It is not, like so many offshore field occupations, an art developed in land work and transposed to a maritime setting. Oil filed divers who regularly spend days or weeks at a time working, eating, and sleeping on vessels are exposed to the same hazards as other seamen. Moreover, when a diver descends from the surface, braving darkness, temperature, lack of oxygen, and high pressures, he embarks on a marine voyage in which his body is now the vessel. Before he can complete his assigned task, he must successfully navigate the seas. Wallace v. Oceaneering International, 727 F.2d at 436. (citations omitted)
Wisner, 98-1755, at 3; 731 So.2d at 200. Following the principle that a commercial diver has the legal protections of a seaman when a substantial part of his duties are performed on vessels, Wallace, 727 F.2d 427, the court held in Wisner that "it is the inherently maritime nature of the tasks performed and perils faced by Wisner as a commercial diver, perhaps the most precarious work at sea, and not the fortuity of his tenure on various vessels, that makes Wisner a seaman." 98-1755, at 5; 731 So.2d at 200 (citing Wallace, 727 F.2d at 436). As such, Wisner is limited to divers and other workers whose duties may be classified as classical seaman's work.

Little's Status
First, we must address appellant's argument that, based upon an incomplete discovery process, the trial court inappropriately *939 addressed appellee's motion for summary judgment. A motion for summary judgment may be considered and granted "[a]fter adequate discovery or after a case is set for trial." La. C.C.P. art. 966(C)(1). However, where a party opposing summary judgment demonstrates an inability to present essential facts by affidavit, the court has a broad range of discretion, including a continuance of discovery. La. C.C.P. art. 967. We do not find that the trial court inappropriately considered appellee's motion for summary judgement. On a motion for summary judgment, the movant must prove that there is no genuine issue of material fact as to at least one essential element of the adverse party's claim, action, or defense, entitling him or her to judgment as a matter of law. La. C.C.P. art. 966(C)(2). However, where, as here, the adverse party bears the burden of proof at trial on the matter, he or she must produce facts that establish an ability to satisfy the evidentiary burden of proof at trial. Id.
In this case, appellee moved for summary judgement on the basis of appellant's lack of a substantial connection to a vessel. Accordingly, the court correctly assumed, in appellant's favor, that he could present genuine issues of material fact regarding whether the Suard 50 was a vessel, that it was in navigation, and that appellant was contributing to the work of the vessel. However, because a worker can not claim the protection of the Jones Act without seaman status, summary judgment would be appropriate if there was no evidence which would raise a genuine issue regarding appellant's substantial connection to the Suard 50.
The record holds ample evidence addressing the material fact of appellant's substantial connection, or lack thereof, to the Suard 50. Ownership and control of each of the vessels appellant worked on is established. Appellant's work time has been established, both in total and for each work assignment. Appellant's duties on each assignment is known. Further, appellant's duties in both crews to which he was assigned is known. Also, the ultimate duration of the work performed aboard the Suard 50, both before and after appellant's accident, is known. Accordingly, the trial court's consideration of appellee's motion for summary judgment was not inappropriate. Therefore, we find no merit in that assignment of error.
Appellant's work aboard the four vessels, as a group, does not meet the substantial connection requirement. None of the vessels were owned or controlled by Franks. Thus, they could not be considered a fleet. Consequently, appellant's seaman status turns upon his substantial connection to the Suard 50, the vessel on which he was injured.
Appellant was not a member of the crew of the Suard 50. The record establishes that appellee rotated casing crews aboard the Suard 50 both before and after appellant's injury. Further, there was no place aboard the Suard 50 to eat or sleep. Thus, this was not a long-term assignment aboard the Suard 50.
Appellant urges that the "thirty percent rule" necessarily affords him seaman status. We disagree. First, as discussed above, Chandris did not establish a bright line thirty-percent test. Chandris, 515 U.S. at 371, 115 S.Ct. 2172. Thirty percent is a guideline, which may not be appropriate in each case. Id. In this case, where a worker's time aboard a vessel equals thirty percent of his total working time only because of a three-week long employment and adding time allegedly missed because of his injury, seaman status based upon this guideline would be inappropriate. To apply this guideline so mechanically would mean that workers in appellant's position could begin their jobs as seamen then, at some unspecified point, cease to be seamen after maintaining their employment for some time. Therefore, we find no merit in appellant's assignments of error regarding this issue.
*940 Appellant argues that either his second crew assignment or his work with the tongs aboard the Suard 50 constitute new assignments and, consequently, he holds seaman status regardless of his time spent aboard the Suard 50. However, appellant's essential duties did not change in either instance. Both crews to which appellant was assigned performed casing work. While appellant's particular duties may have varied with each assignment, they were still within the normal duties performed by a member of a casing crew. Further, the appellant himself stated that he was never actually reassigned as a tong operator. Thus, we find no merit in these assignments of error.
Accordingly, based upon the permanent assignment requirement of Papai, appellant did not have a substantial connection to the Suard 50. Because appellant does not perform a classical seaman's job that inherently subjects him to the perils of the sea, we distinguish this case from Wisner and find it inapplicable. Consequently, appellant does not meet the seaman test under the Jones Act and appellee is entitled to judgment as a matter of law, dismissing all of appellant's claims against it.

CONCLUSION
Therefore, based upon our review of the record before this court, we affirm the judgment of the trial court granting summary judgment in favor of appellee and its dismissal of all claims brought against appellee. Costs of this appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The breakdown was as follows: (1) ten hours on the land-based job, (2) three hours on the jack-up rig, (3) ten on the moveable drilling barge, (4) six hours on the Modu, and (5) four hours on the spud barge at the time of the accident.
[2] The reasoning in the lower court, which the Supreme Court rejected in Papai, mirrored the reasoning adopted by this court, Patterson v. Weber Marine and Fireman's Fund Insurance Company, 92 CA 0729R (La.App. 1st Cir.1994), 635 So.2d 686, and the Louisiana Supreme Court, Folse v. Western Atlas International Inc., 593 So.2d 341 (La.1992). As did the lower court in Papai, both courts rely upon Wilander and Gizoni to reject the permanent attachment aspect of Robison and its progeny. Papai's insistence that this aspect of the seaman test must not be abrogated seems to overrule this court and the Louisiana Supreme Court.