736 So.2d 1026 (1999)
Kenneth B. GUMPERT, Jr. and Aaron Hebert
v.
PITTMAN CONSTRUCTION CO., INC.
Nos. 98-CA-2269, 99-CA-0709.
Court of Appeal of Louisiana, Fourth Circuit.
June 9, 1999.
*1028 Donald F. deBoisblanc, New Orleans, Louisiana, and Catherine Leary, Avondale, Louisiana, Counsel for Plaintiffs.
Sidney W. Degan, III, R. Edward Blanchard, Degan, Blanchard & Nash, New Orleans, Louisiana, Counsel for Defendants/Appellants.
Robert I. Siegel, Michael B. Alker, Hoffman, Siegel, Seydel, Bienvenu & Centola, New Orleans, Louisiana, Counsel for Defendant/Appellee.
George J. Nalley, Jr., George J. Nalley, Jr., PLC, Metairie, Louisiana, Counsel for Intervenors/Appellees.
Court composed of Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.
Plaintiffs, Kenneth B. Gumpert, Jr. and Aaron Hebert, were injured when a floating platform on which they were standing fell while being lifted from the Mississippi River. At the time of the accident, plaintiffs were members of the Local 60 of the Plumbers and Pipe Fitters Union and were employed by defendant, Gallo Mechanical Contractors, Inc. (Gallo Mechanical). Plaintiffs were installing pipe under a riverfront wharf pursuant to a subcontract between Gallo Mechanical and codefendant, C.R. Pittman Construction Company (Pittman).[1] Under the terms of *1029 the subcontract Pittman provided Gallo with a "floating work platform" and a cherry picker which was to be used to load large diameter piping onto the barge. Pittman also provided Gallo with an operator for the cherry picker.
Prior to the accident, the platform on which the plaintiffs worked was lowered and raised daily into the river by a cherry picker. Plaintiffs were on the platform during the lowering and raising. On the day of the accident, the cherry picker was incapacitated and the plaintiffs were lifted from the river by a backhoe. When the operator of the backhoe attempted to remove the platform and the men from the river the cables tore, dropping the men into the river with the barge falling atop the men. Both men sustained injuries.
Initially, plaintiffs sued Pittman for negligence. Gallo Inc and Gallo Mechanical and their insurers intervened seeking reimbursement for benefits paid to plaintiffs. Pittman moved for summary judgment claiming that it was immune from suit under a statutory employer defense. After several supplements and oppositions such motion was denied. One year after filing its original petition plaintiffs amended it to include Jones Act and/or general maritime claims and added their employer Gallo Mechanical as a defendant.
After a trial on the merits the trial court issued judgment in favor of plaintiffs against Gallo Mechanical for damages, loss of wages and medical expenses. The trial court also issued judgment in favor of Gallo Mechanical and its insurer, as intervenors, against plaintiffs for benefits already paid. All claims against Pittman were dismissed.
Gallo Mechanical appeals this decision asserting that the trial court erred in finding that the structure on which plaintiffs worked was a vessel and that plaintiffs were seaman. Gallo Mechanical also asserts that the trial court erred in finding that the operator and flagman, employees of Pittman, were borrowed servants of Gallo Mechanical.
Plaintiffs cross-appeal asserting that the trial court erred in relieving Pittman of liability. In addition, plaintiffs assert the trial court erred in allowing full recovery for workmen' compensation benefits paid to intervenors.
We affirm the trial court's decision.

DISCUSSION

VESSEL
The threshold question is whether the structure on which plaintiffs were injured was a vessel under the Jones Act. The statutory definition of "vessel" includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3 (West 1998). Courts have traditionally interpreted the term as structures designed or utilized for the "transportation of passengers, cargo or equipment from place to place across navigable waters." Manuel v. P.A.W. Drilling & Well Service, Inc., 135 F.3d 344 (5 Cir. 1998); Cook v. Belden Concrete Products, 472 F.2d 999, 1002 (5 Cir.1973); Bernard v. Binnings Const. Co., Inc., 741 F.2d 824, 828-829 (5 Cir.1984).
The determinative factors in establishing whether a structure is a vessel are the purpose for which the structure was constructed and the business in which the structure was engaged. Manuel, supra.; Blanchard v. Engine & Gas Compressor Services, Inc. 575 F.2d 1140 (5 Cir.1978); Hicks v. Ocean Drilling & Exploration Co., 512 F.2d 817 (5 Cir.1975), cert. denied, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976). Special purpose structures whose primary purpose is for navigation have been found to be "vessels" despite the structure also being used as a work platform. See, Mouton v. Tug Ironworker, 811 F.2d 946 (5 Cir.1987) (finding a derrick barge used to transport men and materials to be a Jones Act vessel); Hicks, supra, (finding a submersible oil storage facility used in connection with *1030 offshore drilling to be a Jones Act vessel). However, it is possible that a structure whose purpose or primary business is not navigation may satisfy the Jones Act's vessel requirement, if at the time of the worker's injury, the structure was engaged in navigation. Bernard, 741 F.2d at 829, citing, Blanchard, 575 F.2d at 1143, n. 5; Cook, 472 F.2d at 1002.
In addition, courts have looked to several objective factors in determining whether a structure is a vessel: 1) navigational aids; 2) raked bow; 3) lifeboats and other lifesaving equipment; 4) bilge pumps; 5) crew quarters; 6) registration as a vessel with the Coast Guard. Bernard, 741 F.2d at 832, Fn. 25, citing, Smith v. Massman Constr., 607 F.2d 87, 88 (5 Cir.1979); Blanchard, 575 F.2d at 1143. Other factors that have been suggested are 7) the intention of the owner to move the structure regularly; 8) ability of the structure, if submerged, to be refloated; 9) the length of the time the structure has remained stationary. Hemba v. Freeport McMoran Energy Partners, Ltd., 811 F.2d 276, 278 (5 Cir.1987). Generally, the determination of what is a vessel is a matter of law; however, in marginal cases a fact inquiry may be proper. Manuel, 135 F.3d at 347.
It is uncontested that the structure in the instant case is crude in design and does not meet the majority of the aforementioned factors. Pittman originally constructed the structure as a platform consisting of two pieces of pipe welded together with pieces of metal plate affixed to the end. According to Michael Pittman, vice-president of Pittman, the company intended the structure to be used as a loading platform for the pipe. Pittman testified that the structure was supposed to be used like a "trailer" and serve the purpose of a "floating deck." Because of the vessel's condition at the time of turnover to Gallo Mechanical, in conjunction with Pittman's intent of use, we find that at the time of turnover the structure was not a vessel under a Jones Act analysis.
However, our inquiry does not stop here. Once the structure was turned over to Gallo Mechanical, the record indicates that the company modified the structure from a floating platform to a self-propelled transportation platform. Gallo Mechanical installed a work deck, handrails, paddies, a motor bracket, and a 25 horsepower outboard motor to the structure. In addition, and more important, Gallo Mechanical used the structure as a transportation vehicle for its men and the pipe to the worksite. According to plaintiffs each workday they were lowered into the river on the platform and would receive the pipe once aboard. From the dock plaintiffs would steer the loaded platform four to six blocks to the work-site located under the wharf. Once plaintiffs were properly situated under the wharf they would install the pipes on pre-installed beams. This process lasted forty minutes to one hour and was conducted several times a day. Plaintiffs left the structure only for lunch and restroom breaks.
Appellants argue that the structure's principal use was a work platform. Although we agree that the platform served a dual purpose, as a workstation and as a transportation vehicle, we can not find that its transportation function was incidental to its work function; therefore, we find that the structure at issue became a vessel under Gallo Mechanical's use.

SEAMAN STATUS
Seaman status is conferred upon those employees whose "duties contribute to the function of the vessel or accomplishment of its commission" and whose connection to a vessel in navigation is substantial in time and nature. Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995); McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 355, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The question of who is a "seaman" is a mixed question of law and fact. Chandris, 515 U.S. at 369, 115 S.Ct. at 2190. The interpretation of the term is a *1031 statutory inquiry, and thus legal; however, it is the fact finder's determination whether an injured employee is a seaman under the particular circumstances. Id.
In the instant case, the plaintiffs were plumbers by trade and under contract with Pittman to install piping. At first glance, plaintiffs are not seamen. However, under the circumstances of this case, we can not find that the trial court was manifestly erroneous in finding otherwise. Plaintiffs were an essential element of the structure's function, they received the pipe as it was loaded onto the structure and transported the pipe to the worksite. They spent the majority of each workday aboard the structure, which throughout the day remained on the Mississippi River. We, therefore, find that the plaintiffs' relationship to the structure was sufficient in time and nature to confer upon them the status of "seaman."

BORROWED SERVANT
Generally, employers are vicariously liable for the torts of their employees. La.C.C.Art. 2320, as codified by La. R.S. 9:3921. However, under the jurisprudentially created doctrine of "borrowed servant" an employer may be absolved of liability. Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951). In Benoit the court recognized that an employer may be absolved from liability of its employees if the employer relinquishes control of the employee to another employer. The court enunciated two tests that relieve the employer of liability: 1) the "whose business test", which focused on whose work was being performed at the time of the accident; and 2) the "right of control" test which focused on which employer had the right to control the employee at the time of the accident. Because these tests often led to inconsistent results the court revisited the issue in LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978) and found that the general employer and the special employer may be held solidarily liable for the torts of the borrowed employee. The Supreme Court in Morgan v. ABC Manufacturer, DEF Insurance Co., GHI Part Supplier, et al., 97-0956 (La.5/01/98), 710 So.2d 1077, restated the law of Borrowed Servant.
There is no determinative test to conduct, but this court has looked to the following factors in determining whether the borrowed servant doctrine applies: "1) the right of control; 2) selection of employees; 3) payment of wages; 4) power of dismissal; 5) relinquishment of control by the general employer; 6) which employer's work was being done at the time of the accident; 7) agreement, explicit or implicit, between the borrowing and lending employee; 8) furnishing of necessary instruments and the place for performance of the work in question; 9) length of time in employment; 10) acquiescence by the employee in the new work situation." Walters v. Metropolitan Erection Co., 94-0162, (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, 1146, writs denied, 94-2858, 94-2870, 649 So.2d 420 (La.1995), citing, Carter v. Chevron Chemical Co., 593 So.2d 942, 947 (La. App. 4 Cir.), writ denied, 596 So.2d 211 (La.1992).
The most important factor is the control issue. Smith v. Two R Drilling Co., Inc., 606 So.2d 804, 813 (La.App. 4 Cir.1992), writ denied, 607 So.2d 560 (La. 1992). There is a presumption that the general employer has control over the employee. Id. To defeat this presumption the party claiming a borrowed servant defense must show that the relationship between the general employer and his employee had been suspended and that a new relationship between the employee and the special employer was created. Id.
The trial court found that the backhoe operator and the flagman were borrowed servants of Gallo Mechanical for whose negligence Gallo Mechanical is responsible. Both Gallo Mechanical and plaintiff aver that this finding is erroneous because Pittman never relinquished control of these personnel. We disagree.
*1032 Pursuant to the subcontract between Pittman and Gallo Mechanical, Pittman provided Gallo with the use of a cherry picker and operator to load large pipe onto the platform. Peter Betz was the designated Pittman employee to operate the cherry picker. Betz testified that when he conducted such operations he did so at the request and direction of Gallo Mechanical supervisor, Bruce Lawrence.
On the day of plaintiffs' accident Betz lowered the platform into the river with a cherry picker. Later in the day Betz realized the cherry picker was inoperable and informed his supervisor, Craig Bilbo. Bilbo informed Betz he would have the equipment repaired. In addition, Bilbo told Betz to leave the platform in the water for the weekend and it would be removed on Monday with another cherry picker.
At quitting time Betz testified that Lawrence directed Betz to lift the platform with the backhoe. Betz informed him that Bilbo had directed him otherwise; however, in contravention to these directions Betz attempted to remove the platform with the backhoe, resulting in the accident.
After reviewing the record and the jurisprudence, we find the backhoe operator and the flagman were borrowed servants of Gallo Mechanical. Therefore, we find no error in the trial court's finding that the backhoe operator and the flagman were borrowed servants of Gallo Mechanical.

JONES ACT NEGLIGENCE
The Supreme Court of Louisiana have recently amended and revised the requirements for finding negligence under the Jones Acts based on the United States Fifth Circuit opinion, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997). The Louisiana Supreme Court stated in Foster v. Destin Trading Corp., on rehearing, 96-0803 (La.10/21/97), 700 So.2d 199:
The Jones Act allows an injured seaman to bring a negligence suit against his employer. 46 U.S.C.App. § 688 (1994). The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery. See id. Such negligence may arise in many ways including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. See Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir.1977); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-21, at 312 (2d ed.1994). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable care under the circumstances. Gatilreaux[Gautreaux] v. Scurlock Marine, Inc., 107 F.3d 331, 335-36 (5th Cir.1997). The [96-0803 La. 4] seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. However, a seaman need only present "slight evidence" that his employer's negligence caused his injuries in order to reach the jury or to be sustained upon appellate review. Id. at 334-35. The employer can introduce evidence of the seaman's own negligence to reduce damages through application of pure comparative fault principles. Like his employer, the seaman must meet the standard of ordinary prudence by acting as a reasonable seaman would act under the same circumstances. Id. at 339.
See also, 725 So.2d 474, 1999 WL 20785, Vendetto v. Sonat Offshore Drilling Co. (La.1/09/99). Walter v. Cooper/T. Smith Stevedoring, 97-0100 (La.App. 4 Cir 3/4/98), 709 So.2d 941.
In the instant case, Pittman and the Port of New Orleans contracted for Pittman to construct improvements for the Riverfront Gaming District. Pittman subcontracted to Gallo. Gumpert and Hebert were employed by Gallo, were injured while installing pipe under the Riverfront *1033 Wharf pursuant to the subcontract between Pittman and Gallo.
Pittman provided Gallo with the use of a cherry picker and an operator to load large pipe onto the platform. Peter Betz was the designated employee to operate the cherry picker. Betz operated the cherry picker at the request and direction of Gallo Supervisor, Bruce Lawrence.
On the day of the accident, the cherry picker became inoperable and Betz informed his supervisor Craig Bilbo. Biblo instructed Betz to leave the platform in the water for the weekend and that it would be removed on Monday with another cherry picker. However, later that day at quitting time Lawrence directed Betz to use the backhoe to lift the platform out of the water using the backhoe was negligent, and as such Gallo was negligent under the Jones Act for the actions of its borrowed servant, Peter Betz.

MOODY FEES
The plaintiffs aver that they are entitled to have the intervenors' lien reduced under Moody v. Arabie, 498 So.2d 1081 (La.1987). In Moody the Louisiana Supreme Court held that when an injured worker sues a third party in tort and that worker's employer or his worker's compensation carrier intervenes for recoupment of worker's compensation paid to the worker, the employer or carrier is obligated to pay a portion of the attorneys' fees of the worker if the worker succeeds in recovering funds from which the employer or carrier realizes recoupment. A Moody reduction is not recoverable when the judgment obtained is against the plaintiffs employer, not against a third-party tortfeasors. Seymour v. Cigna Ins. Co., 653 So.2d 649 (La.App. 5 Cir.1995). The judgment in the instant case is against plaintiffs' employer Gallo Mechanical, therefore, a Moody reduction is not recoverable.
Accordingly, the judgment of the trial court in favor of the plaintiffs against Gallo Mechanical is affirmed. The judgment in favor of the Intervenors for benefits paid against plaintiffs is affirmed. Furthermore, the judgment dismissing plaintiffs' claims against C.R. Pittman is affirmed.
AFFIRMED.
NOTES
[1] The prime contract between Pittman and the Port of New Orleans required Pittman to construct improvements for the Riverfront Gaming District Site.