# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-201 c/w 07-339


**OVIE REEVES, JR.**

**VERSUS**

**F. MILLER & SONS, INC.**


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 04-1900
HONORABLE G. MICHAEL CANADY, DISTRICT JUDGE
**********

**SYLVIA R. COOKS
JUDGE**

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir and Billy H. Ezell, Judges.


**AFFIRMED.**

Raleigh Newman
Donald W. McKnight
1830 Hodges Street
Lake Charles, LA 70601
(337) 439-5788
COUNSEL FOR PLAINTIFF/APPELLANT
 Ovie Reeves, Jr.

David K. Johnson
Johnson, Stiltner & Rahman
2237 South Acadian Thruway
P.O. Box 98001
Baton Rouge, LA  70898-8001
(225) 231-0755
COUNSEL FOR INTERVENOR/APPELLANT:
 Louisiana Workers' Compensation Corporation

Bettye A. Barrios
Ronald A. Johnson
Johnson, Johnson, Barrios & Yacoubian
701 Poydras Street, Suite 4700
New Orleans, LA 70139
(504) 528-3001
COUNSEL FOR DEFENDANT/APPELLEE:
    F. Miller & Sons, Inc.

**COOKS, Judge.**

The Plaintiff appeals a jury verdict finding he had not proven by a preponderance of the evidence that he was a Jones Act seaman. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Orie Reeves, Jr., began his employment with Defendant, F. Miller and Sons, Inc., in 1992. Defendant is a company involved in general construction, including construction of buildings, bridges, wharfs, etc. Plaintiff worked as a pile driver/operator who performed various construction duties. On March 19, 2003, Plaintiff alleged he injured himself while engaged in the course and scope of his employment when he slipped on the deck of a pile driving barge located at the Port of Lake Charles. Claiming status as a Jones Act seaman, Reeves sued his employer for damages allegedly sustained as a result of the accident.

The matter was tried by jury from May 15, 2006 through May 24, 2006. At trial, the payroll records for the years 1995 through 2003 were introduced. F. Miller and Sons contended, through the testimony of its operations superintendent, Jim Benoit, that Reeves worked less than sixteen percent (16%) of his work time aboard a barge. Defendant also asserted, at most, twenty-eight percent (28%) of Reeves' work time occurred with a barge on site. Plaintiff presented the testimony of Robert Kubelka, who was accepted by the trial court as an expert "in the field of operations of special purpose vehicles." Mr. Kubelka acknowledged he did not prepare any calculations or charts, nor did he review all of the time sheets. He simply responded to counsel for plaintiff's questions about selected jobs which were in furtherance of the mission of the vessel.

The jury returned a verdict holding that Plaintiff had not proven by a

preponderance of the evidence that he was a seaman under the Jones Act. Plaintiff has appealed the verdict, contending the jury's finding that he was not a Jones Act seaman was clearly contrary to the law and evidence.

## ANALYSIS

The Jones Act, 46 U.S.C. § 688(a), mandates that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law. . . ." While the Jones Act affords an injured seaman the right to maintain an action, it is silent as to the definition of "seaman." Thus, the Act leaves it to the courts to determine which maritime workers are entitled to admiralty's special protection.

The Louisiana Supreme Court in *Richard v. Mike Hooks, Inc.*, 01-145 (La. 10/16/01), 799 So.2d 462, 465-67, addressed the issue of who qualifies as a seaman under the Jones Act:

> The United States Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), set forth the elements for seaman status as follows: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission; (2) a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. *See Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.

> The *Chandris* court explained that the first element was intended to exclude from Jones Act protection those individuals who do not perform the ship's work. The court recognized, however, that the threshold requirement is very broad, stating that "all who work at sea in the service of a ship" are eligible for seaman status. *See id.*

> The second element, however, is a more narrow inquiry. The *Chandris* court explained the element as follows:

>> The fundamental purpose of the substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in

navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See 1B A. Jenner, Benedict on Admiralty§ 11a, pp. 2-10.1 to 2-11 (7th ed. 1994) ("If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)).

*Chandris*, 515 U.S. at 368-69, 115 S.Ct. at 2190.

The *Chandris* court then provided guidance in ascertaining who is a "member of the crew" and, therefore, a seaman. The court held:

"[T]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (CA5 1984). The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

\* \* \*

A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land-based and therefore not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure.

\* \* \*

A worker who spends less then [sic] about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Wilander*, 498 U.S., at 356, 111 S.Ct., at 818.

*Chandris*, 515 U.S. at 370-71, 115 S.Ct. at 2190-91.

In 1997, the United States Supreme Court in *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), further clarified the rule by stating:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Harbor Tug*, 520 U.S. at 555, 117 S.Ct. at 1540.

We begin with the first element of the *Chandris* test, that an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. The court of appeal held that this element was met, and with this we agree. Richard did perform maintenance and repair work on defendant's vessels that contributed to their function.

We recognize, however, as did the *Chandris* and *Harbor Tug* courts, that the first element of the test is general and that the inquiry of whether an individual is a seaman will often turn on the second element of the *Chandris* test. That element requires the employee to show "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *See Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.

Regarding the latter element, the court of appeal found that Richard did have a connection to Hooks's vessels that was substantial in duration and nature because, in considering the totality of the circumstances, Richard's work was of a seagoing nature that exposed him to the perils of the sea. The court noted that Richard spent over thirty percent of his time aboard defendant's vessels, that his work contributed to the function of the vessels, and that he was exposed to the perils of the sea in performing those duties. The court referred to the testimony of a marine expert who stated that Richard faced the "perils of the sea" such as "hazards of cargo operations, ship's cranes/booms, slippery decks, sinking vessel, fire hazards, etc."

We agree that Richard had a connection to defendant's vessels, but disagree that the connection was substantial in duration and nature. The fact that Richard spent in excess of thirty percent of his time working on defendant's vessels does not, in and of itself, make him a seaman. Thirty percent is not a magic number automatically rendering an individual's connection with a vessel substantial in duration and nature. Thirty percent is simply a guideline, a minimum below which an individual generally does not qualify as a seaman. Furthermore, the fact that Richard may have been exposed to some perils does not

-4-

automatically qualify him as a seaman. "Seaman status is not co-extensive with seamen's risks." *Chandris*, 515 U.S. at 361, 115 S.Ct. at 2186.

Richard's time spent aboard Hooks's vessels and the perils he faced must be considered along with other important facts to determine whether his connection with defendant's vessels are substantial in nature and duration. In this particular instance, we consider an analysis of the following: all of the vessels on which plaintiff worked were dockside; he was never more than a gangplank's distance from shore when working on the vessels; some of the vessels were partially on land while being repaired; he never slept on the vessels; he did not eat on the vessels; he did not keep watch on vessels overnight; he was not a member of Hooks's dredge crew that performed welding on dredges in operation; he never worked on a vessel while it was performing its primary mission; he took his orders from a land-based foreman; he was only aboard small moving vessels once every month, for short durations, where he assisted in moving dredge pipe along a canal adjacent to Hooks's yard; and his repair duties did not take him to sea. While none of these individual facts alone prohibit an employee from attaining seaman status, a consideration of them together shows that Richard was a land-based employee, not a seaman.

Richard has argued that the facts surrounding his employment should not prevent him from attaining seaman status because similar facts were present in four post-*Chandris* cases. Richard cites *Manuel v. P.A.W. Drilling & Well Service, Inc.*, 135 F.3d 344 (5th Cir.1998); *Burgess v. C.F. Bean Corp.*, 98-3072 (La.App. 4 Cir. 8/18/99), 743 So.2d 251; *Gumpert v. Pittman Construction Co., Inc.*, 98-2269, 99-0709 (La.App. 4 Cir. 6/9/99), 736 So.2d 1026; and *In re Endeavor Marine Inc.*, 234 F.3d (5th Cir.2000).

While some of the facts in *Manuel*, *Burgess*, *Gumpert*, and *In re Endeavor Marine, Inc.* may be similar to some facts in this case, the totality of the circumstances are distinguishable. The determination of seaman status is inherently fact intensive, and each case must be decided under the facts presented therein. *See Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191; *Wilander*, 498 U.S., at 356, 111 S.Ct., at 818. While the courts which decided *Manuel*, *Burgess*, *Gumpert*, and *In re Endeavor Marine Inc.* found the plaintiffs therein to be seamen, the facts surrounding Richard's employment, in our view, do not yield the same result.

The totality of the circumstances surrounding Richard's employment does not provide him with a connection to defendant's vessels that is substantial in nature and duration. The facts indicate that Richard is a land-based employee who happens to spend some of his time working aboard defendant's vessels. Jimmy Shay Richard is not a Jones Act seaman.

For the foregoing reasons, we reverse the finding by the trial court and court of appeal that plaintiff is a seaman entitled to Jones Act benefits, and dismiss this claim with prejudice.

Both Plaintiff and Defendant agree *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172 (1995) sets forth the applicable law on this issue. Plaintiff has not alleged any improper jury instructions or evidentiary rulings by the trial court. Its argument on appeal attacks solely the jury's conclusion that the evidence presented at trial did not establish plaintiff was a seaman under the Jones Act.

In the chart prepared by Jim Benoit, he listed as "land" any time that Plaintiff was not standing on the barge for his work. Listed as "water" was any time Plaintiff was standing on the barge while performing his job duties. On this chart, Plaintiff worked a grand total of 15,038 hours, of which 2,428 were for work on water. That amounts to 16% of Plaintiff's work performed on "water." Another chart also documented the number of hours Plaintiff worked while a barge was present at the job site, regardless of whether Plaintiff was actually on the barge. Benoit concluded a barge was on site twenty-eight percent (28%) of the hours Plaintiff worked. Benoit testified he believed his calculations were "real accurate." Defendant argues Benoit's calculations "were uncontradicted and provided the jury with more than a reasonable basis for finding Plaintiff was not a Jones Act seaman." The jury apparently agreed.

Plaintiff presented the testimony of Robert Kubelka, who was accepted by the trial court as an expert "in the field of operations of special purpose vehicles." Although Plaintiff in brief argues Kubelka made it "clear that where the crew member is physically standing while doing his work is totally immaterial," a review of his testimony reveals otherwise. Kubelka specifically testified at trial that he understood his role at trial was to testify as to "where physically a person that occupies such a position [pile driver] as the plaintiff did where he would be physically." Despite what

Kubelka believed his role to be at trial, counsel for Plaintiff took certain jobs, gave a description of the job, and asked Kubelka whether it was in "furtherance of the mission of the vessel." Mr. Kubelka answered yes to each.

Counsel for Plaintiff apparently misunderstands the two-step test of *Chandris*. Continually, Plaintiff focused on the first prong of the *Chandris* test, "that an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." As the courts have consistently noted, this element is easily met, as it was in the present case. It is the second prong of the test – that the employee have a connection to a vessel in navigation that is substantial in terms of both duration and nature – that is at issue in this case, and the jury's resolution of it ultimately was fatal to Plaintiff's attempt to establish his alleged Jones Act seaman status.

As Defendant points out in brief, no charts or calculations of Plaintiff's work time was presented in opposition to the calculations presented by Defendant. No witness presented by Plaintiff reviewed the time records to determine what amount of time Plaintiff was actually working on a vessel in navigation, as is required by the second prong of *Chandris*. Plaintiff has set forth a chart in its brief before this court claiming he spent approximately thirty-eight percent of his hours working "as a crew member of the pile driving vessel, contributing to the mission and function of that vessel." We note this chart was never presented to the jury, and as such is not something they could have considered in their deliberations.

As the court in *Hooks* stated, the "time spent aboard [the] vessels and the perils he faced must be considered along with other important facts to determine whether his connection with defendant's vessels are substantial in nature and duration." *Id.* 799 So.2d at 465. The record establishes all the vessels on which plaintiff worked

were dockside; he did not sleep on the vessels; he did not eat on the vessels; he did not keep watch on the vessels overnight; and his pile driving duties did not take him to sea. While none of these individual facts alone prohibit an employee from attaining seaman status, a consideration of them together indicates the jury did not err in finding Plaintiff was a land-based employee, not a seaman. *See Hooks,* supra.

In general maritime law and Jones Act cases, appellate courts are to apply the manifest error standard of review, i.e., a factual finding of the jury cannot be set aside unless we find it is manifestly erroneous or clearly wrong. *Coutee v. Global Marine Drilling Co.*, 05-756 (La. 2/22/06), 924 So.2d 112; *Davis v. Ensco Offshore Co.*, 06-197 (La.App. 3 Cir. 5/31/06), 931 So.2d 1194. After a thorough review of the record, we cannot say that the jury was manifestly erroneous or clearly wrong in finding that Plaintiff did not prove by a preponderance of evidence that he was a seaman under the Jones Act.

Plaintiff also argues he received a new assignment of work duties in 2001, such that it entitles him to be classified as a Jones Act seaman under an exception set forth by *Chandris*. The *Chandris* court noted there is a limited exception to the requirement that an employee must spend at least thirty percent of his entire employment on vessels. This very narrow jurisprudential exception provides that if an employee receives a new work assignment in which his *essential duties* are changed, he is entitled to have the assessment of his vessel-related work made on the basis of his activities in his new position. The United States Fifth Circuit Court of Appeals in *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389-90 (5th Cir. 2003), discussed in detail this exception:

> [T]he Supreme Court has articulated an exception to temporal guidelines, such as our thirty-percent benchmark. First, an employee who has worked for years in an employer's shoreside headquarters and who is then reassigned to a ship in a classic seaman's job qualifies for

seaman status even if he is injured shortly after reassignment. Second, a worker who has been reassigned to a land-based job cannot claim seaman status based on prior service at sea. The [*Chandris*] Court summed up these two exceptions by noting that "[i]f a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." Thus, a worker who, over the course of his employment, has worked in the service of a vessel in navigation well under thirty percent of his time may still qualify for seaman status if he has been reassigned to a new position that meets this temporal requirement. It is this exception that plaintiff now tries to utilize, claiming that his assignment to the REPUBLIC TIDE constituted the requisite fundamental change in his status.

This exception, however, creates a potential problem: any worker who works intermittently on vessels in navigation and who sustains an injury in the course of doing so will claim seaman status if he is injured while at sea. For instance, a worker whose duties sometimes take him to sea could claim that the start of each voyage establishes a reassignment to a sea-based position and that his return to shore again shifts his status back to a land-based worker. It appears that the Supreme Court attempted to preempt such arguments by specifically rejecting a "voyage test" of seaman status under which a worker could "walk into and out of coverage in the course of his regular duties." Rather, the Court's opinion in *Chandris* contemplates that a change in coverage under the Jones Act occurs only when the status of the worker changes, not simply because a worker happens to serve on a vessel before returning to work on land. To give teeth to the *Chandris* opinion's rejection of a voyage test, it must be held that merely serving an assignment on a vessel in navigation does not alter a worker's status. If that were not the case, *Chandris* in fact *would* have established a voyage test. This conclusion is consistent with the language of *Chandris,* which instructs that "we do not believe that any maritime worker on a ship at sea as part of his employment is automatically a member of the crew within the meaning of the statutory scheme."

(Citations omitted).

Plaintiff's argument shows a basic misunderstanding of the reassignment exception. Plaintiff acknowledges that at all times during his employment with defendant, he was a member of a pile driving crew. What he argues is that, beginning in 2001, Plaintiff began spending significantly more time on the water than in previous years. However, the record established that at all times during his

employment with Defendant, Plaintiff's essential duties never changed. His co-worker Timothy Hall stated that he and Plaintiff were always "considered pile drivers." Plaintiff was considered a pile driver when he worked at the job site at the Port of Lake Charles where he was injured.

In *Little v. Amoco Production Co.*, 98-1130 (La.App.1 Cir. 5/14/99), 734 So.2d 933, the appellate court affirmed the denial of seaman status finding the plaintiff's "essential duties" did not change. The court explained:

> Appellant argues that either his second crew assignment or his work with the tongs aboard the Suard 50 constitute new assignments and, consequently, he holds seaman status regardless of his time spent aboard the Suard 50. However, appellant's essential duties did not change in either instance. Both crews to which appellant was assigned performed casing work. While appellant's particular duties may have varied with each assignment, they were still within the normal duties performed by a member of a casing crew.

*Id*. at 940.

The same situation occurred here. While Plaintiff's location may have changed at different jobs, his essential duties never did. While employed by F. Miller and Sons he performed the normal duties of a pile-driver. Therefore, the jury did not err in finding there had been no "reassignment" prior to Plaintiff's injury.

Because we affirm the jury's finding that Plaintiff did not establish status as a Jones Act seaman, the arguments concerning liability and damages are rendered moot.

## DECREE

For the foregoing reasons, the judgment of the lower court is affirmed. All costs of this appeal are assessed to plaintiff-appellant, Ovie Reeves.

**AFFIRMED.**

-10-