731 So.2d 200 (1999)
Douglas WISNER
v.
PROFESSIONAL DIVERS OF NEW ORLEANS.
No. 98-C-1755.
Supreme Court of Louisiana.
March 2, 1999.
*201 Conrad S. P. Williams, III, St. Martin & Williams, Houma; Joseph W. Walker, Franklin, Mosele & Walker, for Applicant.
Richard S. Vale, Blue & Williams, Metairie, for Respondent.
John W. deGravelles, Baton Rouge, for Louisiana Trial Lawyers (Amicus Curiae).
TRAYLOR, Justice.[*]
We granted this writ to determine if a commercial diver, whose employment placed him on vessels for ninety percent of his work life, is a seaman and thus entitled to Jones Act coverage. After reviewing *202 the record and applicable law, we reverse the lower courts' finding and hold that Jones Act coverage should not be withheld based upon the fact that the vessels upon which a diver works are not under his employer's common ownership and control. Because a commercial diver's duties continuously subject him to the perils of the sea, plaintiff is properly classified as a Jones Act seaman.

FACTS AND PROCEDURAL HISTORY
On January 15, 1994, Douglas C. Wisner (Wisner), a commercial diver by trade, was employed by Professional Divers of New Orleans, Inc. (PDNO) installing anodes on platforms and repairing pipelines while working aboard Exxon's fixed platform seventy-three in the West Delta region of the Gulf of Mexico. However, approximately twenty-one hours after making a dive of 165 feet, Wisner began to feel light headed and out of breath. On January 16, 1994, Wisner was flown to shore and subsequently sought medical attention at Jo Ellen Smith Regional Medical Center in New Orleans. After receiving hyperbaric treatment, Wisner was admitted to the hospital and later treated for tachycardia, which developed while he was in the hospital.
Wisner worked for PDNO as a diver from November 1992 until January 1994. In the course of his employment, Wisner was assigned to numerous jobs, ten percent (10%) of which required him to work off of fixed platforms and ninety percent (90%) of which required him to work from vessels. With the exception of the job at issue, Wisner slept and ate on the vessels from which he was diving. Wisner worked on approximately fourteen different vessels owned by twelve different companies while employed by PDNO.
In May 1994, Wisner filed his original petition alleging that he was a Jones Act seaman employed by PDNO at the time of his injury. PDNO then moved for summary judgment, alleging that Wisner was not a Jones Act seaman, but rather, a maritime worker who should be compensated under the Longshore and Harbor Workers Compensation Act. The trial court found that Wisner did not have a substantial connection to a vessel or fleet of vessels under some degree of common ownership or control and thus granted PDNO summary judgment, which was later affirmed by the court of appeal. Because we find Wisner faced regular exposure to the perils of the sea as a Jones Act seaman, we now reverse.

LAW AND DISCUSSION
A major body of seaman status law developed in the Court of Appeals for the Fifth Circuit in the wake of Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959). See, Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). At the time of his injury, Robison was an oil worker permanently assigned to a drilling rig mounted on a barge in the Gulf of Mexico. In sustaining the jury's award of damages to Robison under the Jones Act, the court held as follows:
[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. Offshore Co. v. Robison, 266 F.2d at 779 (footnote omitted).
The first prong of the Robison test has both a permanency requirement and a substantiality requirement. In order to fulfill the permanency requirement, a claimant must have "more than a transitory connection" with a vessel or a specific group of vessels. Davis v. Hill Engineering, Inc., 549 F.2d 314, 326 (5th Cir.1977); *203 Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). The court's focus in this regard is "meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for a relatively short period of time." Porche v. Gulf Mississippi Marine Corp., 390 F.Supp. 624, 631 (E.D.La.1975); Bertrand v. International Mooring & Marine, Inc., 700 F.2d at 247; Buras v. Commercial Testing & Eng'g Co., 736 F.2d 307, 310 (5th Cir.1984). The Fifth Circuit Court of Appeal has specifically noted that this requirement should not be given a "wooden application," Brown v. ITT Rayonier, Inc., 497 F.2d 234, 237 (5th Cir.1974), and has characterized the permanency requirement as being "more frequently an analytical starting point than a self-executing formula." Brown v. ITT Rayonier, Inc., 497 F.2d at 237; Buras v. Commercial Testing & Eng'g Co., 736 F.2d at 310. For a claimant to satisfy the substantial work requirement of Robison, "it must be shown that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity." Barrios v. Engine & Gas Compressor Services, Inc., 669 F.2d 350, 353 (5th Cir.1982); Bertrand v. International Mooring & Marine, Inc., 700 F.2d at 246. Since Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986), the Fifth Circuit has consistently analyzed the problem in terms of the percentage of work performed on vessels for the employer in question, and has declined to find seaman status where the employee spends less than 30 percent of his time aboard ship. Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 2189, 132 L.Ed.2d 314 (1995). The substantial connection requirement may be used to distinguish between sea-based employees and land-based employees, as land-based employment is inconsistent with Jones Act coverage. Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 117 S.Ct. 1535, 1542-43, 137 L.Ed.2d 800 (1997).
The second prong of the Robison two-part test for determining seaman status under the Jones Act, that an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission, is easily met. The United States Supreme Court has noted in both McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807, 817, 112 L.Ed.2d 866, and Chandris that it is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel. Rather, a seaman must be doing the ship's work. Chandris, Inc. v. Latsis, 115 S.Ct. at 2184. Although this element is not disputed in the case at hand, seaman status is not so easily deciphered, as the jurisprudential interpretation of a seaman encompasses several factors, none of which is conclusive. See, e.g., Bertrand v. International Mooring & Marine, Inc., 700 F.2d at 246 (while the fact that a claimant's work places him on several different vessels does not preclude seaman status, it is relevant in making that determination).
The principle developed in Bertrand and Buras, that determination of seaman status should not be controlled by an employer's chartering arrangement, was later used in Wallace v. Oceaneering Int'l, 727 F.2d 427 (5th Cir.1984), to hold that a commercial diver has the legal protections of a seaman when a substantial part of his duties are performed on vessels. See, Bertrand v. International Mooring & Marine, Inc., 700 F.2d at 245; Buras v. Commercial Testing & Eng'g Co., 736 F.2d at 312. The Bertrand court found Jones Act coverage should not be withheld because the vessels are not under the employer's common ownership or control, when claimants are continuously subjected to the perils of the sea and engaged in classical seaman's work. Bertrand v. International Mooring & Marine, Inc., 700 F.2d at 245. The Fifth Circuit specifically held that, in light of the purposes of the Jones Act, employers will not be allowed to deny *204 Jones Act coverage to seamen by arrangements with third parties regarding a vessel's operation or by the manner in which work is assigned. Id. With these principles in mind, the Wallace court found a commercial diver, who was employed with a diving service contractor for only several days at the time of his accident, to be a seaman. The court specifically held:
A diver's work necessarily involves exposure to numerous marine perils, and is inherently maritime because it cannot be done on land. It is not, like so many offshore field occupations, an art developed in land work and transposed to a maritime setting. Oil field divers who regularly spend days or weeks at a time working, eating, and sleeping on vessels are exposed to the same hazards as other seamen. Moreover, when a diver descends from the surface, braving darkness, temperature, lack of oxygen, and high pressures, he embarks on a marine voyage in which his body is now the vessel. Before he can complete his assigned task, he must successfully navigate the seas. Wallace v. Oceaneering Int'l, 727 F.2d at 436. (citations omitted)
After thirty-three years of silence, the United States Supreme Court in McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), considered the question of seaman status and affirmed the Robison requirement that a worker's duties must contribute to the function of the vessel or the accomplishment of its mission. Wilson L. Maloz, III, Harbor Tug & Barge Co. v. Papai: The United States Supreme Court Takes a Fleeting Glance at Jones Act Seaman Status, 72 Tul. L.Rev. 2227 (1998). However, Wilander did not provide a complete definition of "seaman" in that it did not address the permanent connection aspect of the Robison test; it simply stated that an "employment-related connection" was required. Id. at 2231. The Supreme Court followed Wilander with a ruling in Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314, that solidified the test for determining seaman status. In addition to affirming Wilander, the court stated that a seaman's connection to a vessel in navigation, or to a group of such vessels, must be substantial in terms of both its duration and its nature. The purpose of this provision was to ensure Jones Act coverage to true seamen, while precluding land-based workers who have only a transitory or sporadic connection to a vessel in navigation and, therefore, whose employment does not regularly expose them to the perils of the sea. Chandris, Inc. v. Latsis, 115 S.Ct. at 2190. The Chandris court poignantly stated that in defining the prerequisites for Jones Act coverage, one should focus upon the essence of what it means to be a seaman rather than allowing jurisprudential "tests" to obscure such a finding. In so doing, the court recommended that the total circumstances of an individual's employment be considered, as the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. Chandris, Inc. v. Latsis, 115 S.Ct. at 2190-91.
The United States Supreme Court most recently explored the boundaries of Jones Act coverage in Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). Relying on the principles set forth in Chandris, the court noted that a requisite degree of common ownership or control is required when determining if an injured worker has a substantial connection to a group of vessels. Harbor Tug & Barge Co. v. Papai, 117 S.Ct. at 1541. However, it is contended, as found in Papai, that a substantial connection to a vessel or fleet of vessels is a part of the test for determining who is a seaman. Harbor Tug & Barge Co. v. Papai, 117 S.Ct. at 1542-43. This view is shared with the United States Supreme Court which found that "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and *205 the perils attendant thereon." Chandris, Inc. v. Latsis, 115 S.Ct. at 2190 citing Wallace v. Oceaneering Int'l, 727 F.2d at 432.
Papai and Chandris dictate that when we determine whether the nature of Wisner's connection to vessels in navigation is substantial, we should focus on whether Wisner's duties were primarily sea-based activities. Harbor Tug & Barge Co. v. Papai, 117 S.Ct. at 1540; Chandris, Inc. v. Latsis, 115 S.Ct. at 2190-91; Cabral v. Healy Tibbits Builders, Inc., 118 F.3d 1363, 1366 (9th Cir.1997). In both cases, the Supreme Court emphasized that the purpose of the substantial connection test is to separate land-based workers who do not face the perils of the sea from sea-based workers whose duties necessarily require them to face those risks. Id. In sum, the formulations or "tests" employed by the various courts are simply different ways to arrive at the same basic point: the Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go to sea in ships are subjected." Chandris, Inc. v. Latsis, 115 S.Ct. at 2190 citing Seas Shipping Co. v. Sieracki, 328 U.S. 85, 104, 66 S.Ct. 872, 882, 90 L.Ed. 1099 (1946) (Stone, C.J., dissenting).

CONCLUSION
After a thorough consideration of the law and the "total circumstances" surrounding Wisner's employment with PDNO, this court holds that Wisner is a seaman under the Jones Act. Particularly persuasive is the fact that Wisner's work as a commercial diver placed him on vessels for ninety percent of his work-life with PDNO, during which time he slept and ate on such vessels. However, it is the inherently maritime nature of the tasks performed and perils faced by Wisner as a commercial diver, perhaps the most precarious work at sea, and not the fortuity of his tenure on various vessels, that makes Wisner a seaman. Wallace v. Oceaneering Int'l, 727 F.2d at 436. We reverse the trial court and court of appeal's finding of summary judgment in favor of PDNO, and hereby remand this case to the trial court for further proceedings consistent with this opinion.
CALOGERO, C.J., concurs and assigns reasons.
KNOLL J., concurs with reasons.
CALOGERO, C.J., concurring.
I concur because I believe that this plaintiff is a Jones Act seaman. His job as a commercial diver continuously subjects him to the perils of the sea, and I say this notwithstanding that his employer is neither the owner nor charterer of the vessels on which he performs his work.
The requirement that a Jones Act seaman have a substantial connection with a vessel is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997). Papai's focus on common ownership with regard to an identifiable group of vessels arose out of the fact that the Papai plaintiff's employment did not include any seagoing activity; he was hired for one day to paint a vessel, dockside. The Court specifically left for another day consideration of the case where an employee was hired to perform seagoing work during the employment in question. Id. 117 S.Ct. at 1542. Consequently, Papai is not controlling for purposes of the instant case.
The Fifth Circuit Court of Appeals in Bertrand v. International Mooring & Marine Inc., 700 F.2d 240, 245 (5th Cir.1983), however, has rejected the proposition that an employee who is continuously subjected to the perils of the sea should be denied *206 Jones Act protection merely because the several vessels upon which he works are not under his employer's common ownership or control. In so holding, the court recognized that the "group of vessels" concept has been used to expand coverage under the Jones Act, not to restrict it. Id. In the instant case, the plaintiff's work as a commercial diver placed him on vessels for ninety percent of his work life with his employer, during which time he slept and ate on the vessels and was routinely exposed to the perils of the sea. As the majority notes, it is the inherent maritime nature of his work which renders him properly classified as a Jones Act seamen. The fact that his employer did not have a relationship of ownership or control regarding the vessels on which he worked does not deprive him of that status.
KNOLL, Justice, concurring
I concur to note that neither Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) nor Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986) are controlling for purpose of the case sub judice. Instead, this case involves what the Papai Court ("This is not a case where the employee was hired to perform seagoing work during the employment in question, however brief, and we need not consider here the consequences of such an employment.") and the Barrett court ("we do not decide whether the same principle governs the crew member status of the maritime worker who spends virtually all of his time performing traditional seaman's dutieswork closely related to the movements of vesselsbut does his work on short voyages aboard a large number of vessels") left for another day: Whether an employee hired to perform seamen duties aboard a number of vessels during the employment in question qualifies for seamen status. Papai and Barrett were concerned with preventing employees hired to perform traditionally land-based activities, whose transitory and sporadic connection to a vessel only occasionally exposed them to the dangers of the sea, from gaining seaman status. The distinction is that in those cases, the duties of the worker were not necessarily or inherently maritime in nature such that his presence on the vessel may be fortuitous. Whereas in the case before us, the plaintiff's duties are inherently maritime in nature and therefore routinely and necessarily exposed him to the perils of the sea. Accordingly, those cases are not controlling as to whether plaintiff has seamen's status.
When we look at the nature of the plaintiff's duties, where he performed them, and the extent to which he was exposed to maritime hazards, he easily satisfies the requirements of seaman status because he performed a substantial part of his work on a vessel, which work contributed to the function of the vessel. Plaintiff worked 90% of his time from vessels, and when he was on the vessels he would live there making them his home where he ate and slept. As a diver, the nature of his duties had to be spent offshore at sea as these cannot be preformed on land. His work involved the installing of anodes on platforms and repairing pipelines. Thus, when he was on the vessels, the diving services were essential to the completion of the vessel's operation and its movement from one spot to the next. It is the nature and location of their tasks and not any fortuity of their tenure on a vessel that makes divers, like the plaintiff, seamen.
NOTES
[*] VICTORY, J., not on panel. See Rule IV, Part 2, § 3.