*1004
 
 TERRI F. LOVE, Judge.
 

 |, Plaintiff/Appellee filed suit against Defendants/Appellants, alleging that he was injured as a result of falling off a barge while performing his employment duties aboard a vessel. Appellants argue that the trial court erred in granting the motion for summary judgment and cross-motion for summary judgment filed by Chet Morrison Contractors, Inc. on the issues of Jones Act seaman status, indemnity, and defense against Coastal Catering, L.L.C.
 

 We find that genuine issues of material fact exist as to Appellee’s Jones Act seaman status. We, therefore, reverse the trial court’s judgment and remand the matter for further proceedings. This finding precludes this Court from further addressing the Appellants arguments regarding insurance coverage and penalty assessment.
 

 | .PROCEDURAL BACKGROUND AND FACTS
 

 Plaintiff/Appellee, Mr. Kerry Becnel (“Mr. Becnel”), was employed by Coastal Catering, L.L.C. (“Coastal”) in 2005, and through a contract with Chet Morrison Contractors, Inc.
 
 [1]
 
 (“CMC”) and/or ES & H, Inc. (“ES & H”), he was assigned to work as part of the cooking/galley staff. Mr. Becnel alleges that during his employment with Coastal, he was injured aboard a vessel while working on a project. Mr. Becnel filed suit against various parties, including Coastal, CMC, and their insurers.
 

 Mr. Becnel alleges that as he was walking from one barge to another, he fell several feet into the water below and sustained injuries. Mr. Becnel brought suit against various parties regarding his injuries, alleging that there was no safety device, railing, chain, rope, or other safety feature to prevent falling from the side of the vessel. Mr. Becnel contends that this was well-known and within the privity of knowledge of the vessel owner. Mr. Bec-nel maintains that he was, yet, allowed to work aboard the unreasonably dangerous vessel without safety training or warnings notwithstanding knowledge of the owner, crew, and captain. Mr. Becnel further contends that vessel interests had knowledge that the only light in the vicinity of the accident was malfunctioning and there was no way for him to appreciate the danger posed by the vessel.
 

 State National Insurance Company (“SNIC”) filed a motion for summary judgment against third-party plaintiff, CMC, arguing that CMC was not covered by |sthe maritime general liability policy issued by SNIC. CMC filed a cross-motion for summary judgment, and the trial court granted CMC’s cross-motion, finding coverage under the polity. CMC also filed a motion for partial summary judgment as to the seaman status of Mr. Becnel and indemnity and defense against Coastal. Coastal filed a cross-motion for summary judgment. The trial court found that Mr. Becnel was a Jones Act seaman and that Coastal is required to defend and indemnify CMC against Plaintiffs claim. Defendants, SNIC and Coastal, appeal.
 

 CMC filed a motion for partial summary judgment on the issues of Jones Act seaman status, indemnity, and defense against Coastal. Coastal filed a cross-motion for partial summary judgment on the same issues, and both motions were heard before the trial court. SNIC filed a motion for summary judgment against CMC, and CMC filed a cross-motion for summary
 
 *1005
 
 judgment against SNIC, which were also heard before the trial court.
 

 The trial court determined that Mr. Bec-nel was a Jones Act seaman and granted CMC’s motion for partial summary judgment on seaman status. Further, the trial court concluded that the provisions of the Longshore and Harbor Workers Compensation Act (LHWCA) were inapplicable and denied Coastal’s crossmotion for partial summary judgment on seaman status, indemnity and defense.
 

 The trial court found that CMC was as an additional insured on Coastal’s insurance policy with SNIC and granted CMC’s cross-motion for summary judgment. The trial court also found that Coastal was contractually bound to defend and indemnify CMC and SNIC’s denial of coverage was unreasonable, | ^arbitrary, and without probable cause. Given that finding, the trial court assessed attorney’s fees, other expenses, and penalties pursuant to La. Rev.Stat. 22:1892 against SNIC.
 

 Thereafter, Coastal, SNIC, and Coastal’s second insurer, Seabright Insurance Company (“Seabright”), settled Mr. Bec-nel’s claims. The trial court then granted a Joint Motion and Order for Dismissal.
 

 STANDARD OF REVIEW AND SUMMARY JUDGMENT
 

 This Court reviews a court’s disposition of a motion for summary judgment de novo, applying the same standards as the trial court.
 
 Schroeder v. Board of Sup’rs of Louisiana State University,
 
 591 So.2d 342, 345 (La.1991).
 

 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code. Civ. Proc. art. 966(B). Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.
 
 Id.
 

 Here, Appellants are not required to negate all essential elements of Mr. Bec-nel’s claim. However, Appellants must show an absence of factual support for one or more essential elements of Mr. Becnel’s claim. If Appellant makes such showing, the burden then shifts to Mr. Becnel to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. If Mr. |fiBecnel successfully produces such support, there is a genuine issue of material fact that precludes summary judgment.
 

 JONES ACT SEAMAN STATUS
 

 Appellants argue that the trial court incorrectly applied the test for determining Jones Act seaman status and, thus, erroneously granted CMC’s motion for partial summary judgment on seaman status.
 

 The applicable theory of recovery before this court is provided in the Jones Act, 46 U.S.CApp. § 688(a), which provides:
 

 “Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in ease of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdic
 
 *1006
 
 tion in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.”
 

 In
 
 Chandris, Inc., v. Latsis,
 
 the United States Supreme Court determined “what relationship a worker must have to the vessel, regardless of the specific tasks the worker undertakes, in order to obtain seaman status.”
 
 Chandris, Inc. v. Latsis,
 
 515 U.S. 347, 350, 115 S.Ct. 2172, 2180, 132 L.Ed.2d 314 (1995). As articulated by the
 
 Chandris
 
 Court, the well-settled two-part test for determining seaman status is: 1) whether the employee’s duties contributed to the function of the vessel or accomplishment of its mission; and 2) whether that employee had a connection to a vessel in navigation which was substantial both in terms of duration and nature.
 
 Id.,
 
 515 U.S. at 368, 115 S.Ct. at 2190.
 

 ^CONTRIBUTION TO THE FUNCTION OF THE VESSEL OR ACCOMPLISHMENT OF ITS MISSION
 

 The United States Supreme Court observed that the first prong of the test of seaman status is easily satisfied, and a maritime employee who does the ship’s work falls within the purview of the Jones Act.
 
 Chandris,
 
 515 U.S. at 368, 115 S.Ct. at 2190. Indeed, “[a]ll who work at sea in the service of a ship” are potential seamen.
 
 Id.
 
 (quoting
 
 McDermott Int’l, Inc. v. Wilander,
 
 498 U.S. 337, 354, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991)). In
 
 Becker v. Tidewater, Inc.,
 
 335 F.3d 376, 388 (5th Cir.2003), the court held that this factor was easily met because the plaintiff “filled one of the [vessel’s] crew positions and engaged in the vessel’s work while on board.”
 

 The parties before us do not appear to dispute that Mr. Becnel meets the first prong of the
 
 Chandris
 
 test. This is evidenced by Appellants’ brief, which states, “[although the Plaintiff was working aboard a vessel, and contributing to the function of that vessel, at the time of the incident in suit, the Plaintiff failed to meet the final, and important, prong of the test for seaman status set forth in
 
 Chandns.”
 
 Additionally, in a sworn affidavit, Mr. John Deblieux, a Commercial Manager for CMC, attested that Mr. Becnel “was assigned to [a] vessel or identifiable fleet of vessels, and his work there helped accomplish the mission of said vessels.”
 

 While no factual dispute exists as to whether Mr. Becnel’s duties contributed to the function of the vessel or accomplishment of its mission, the record reflects that at the time of the incident, Mr. Becnel was assigned to work as a cook on a quarters barge that housed workers, who took part in removing debris from water. Mr. Becnel’s deposition testimony reflects that he was told that he would work seventeen (17) seventeen hours daily and that he would be responsible for 17preparing three meals daily, cooking and cleaning. Mr. Becnel testified that during his work on the barge in question, when the floor remained wet in the galley . after being mopped, crew members would routinely close off the galley and walk around it rather than traverse the galley. He testified that crew members would use a water barge to get over to the living quarters. Mr. Becnel stated it was while using this alternate route that he fell from the side of the barge into the water below and injured himself.
 

 We find that Mr. Becnel’s duties contributed to the function of the vessel or accomplishment of its mission in satisfaction of the first prong of the test for seaman status.
 

 CONNECTION WITH A VESSEL SUBSTANTIAL IN DURATION AND NATURE
 

 As to the second prong of the test for seaman status, in
 
 Chandris,
 
 the Su
 
 *1007
 
 preme Court explained its significance and stated:
 

 The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.
 
 Chandris,
 
 515 U.S. at 368, 115 S.Ct. at 2190.
 

 In applying this substantial connection requirement, the duration of the worker’s connection to a vessel and the nature of the worker’s activities taken together determine whether a maritime employee is a seaman.
 
 Chandris,
 
 515 U.S. at 370, 115 S.Ct. at 2172.
 

 1 sGiven that, we now consider whether Mr. Becnel had a connection to a vessel in navigation. If so, we must then determine whether that connection was substantial in duration and nature.
 

 VESSEL CONNECTION
 

 The Supreme Court has articulated that the second prong constitutes a “status-based” standard — i.e., “it is not the employee’s particular job that is determinative [of seaman status], but the employee’s connection to a vessel.”
 
 Chandris,
 
 515 U.S. at 364, 115 S.Ct. at 2188.
 

 Appellants argue that Mr. Becnel is not a seaman entitled to damages under the Jones Act because he did not have an employment connection to a particular vessel and/or fleet of vessels under common ownership. In support of their argument, Appellants aver that employment records and an affidavit executed by the president of Coastal establish that Mr. Becnel was randomly assigned to work for various customers of Coastal. While Appellants concede that some of Mr. Becnel’s assignments were to vessels, they also maintain that most of Mr. Becnel’s assignments were to fixed platforms.
 

 We first note that “merely being “subject to reassignment [to a non-seaman role or status] ... at some point later in time is of no moment” and does not in itself defeat a worker’s seaman status.”
 
 Parker v. Jackup Boat Service, LLC,
 
 542 F.Supp.2d 481 (E.D.La.2008) (citing
 
 Becker v. Tidewater, Inc.,
 
 335 F.3d 376, 392 (5th Cir.2003)). “An employer’s claim that an employee ‘could have been assigned to other work locations’ does not preclude that employee’s seaman status.”
 
 Id.
 

 In
 
 Bertrand v. International Mooring & Marine, Inc.,
 
 700 F.2d 240 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984), the Court reached the conclusion that Jones Act coverage should not be withheld because the vessels are not under the employer’s common ownership or control when claimants are continuously subjected to the perils of the sea and engaged in classical seaman’s work. The Court held that, in light of the purposes of the Jones Act, employers will not be allowed to deny Jones Act coverage to seamen by arrangements with third-parties regarding a vessel’s operation or by the manner in which work is assigned.
 
 Id.
 

 Moreover, in
 
 Wisner v. Professional Divers of New Orleans,
 
 98-1755 (La.3/2/99), 731 So.2d 200 (1999), the Louisiana Supreme Court found that a commercial diver whose employer did not own or control a vessel or fleet of vessels was still a seaman for the purpose of the Jones Act, provided that a substantial part of his duties were performed on vessels.
 
 Id.
 
 The Court found that the determination of seaman status should not be controlled by
 
 *1008
 
 an employer’s chartering arrangement.
 
 Id.
 
 In light of the principle that determination of seaman status should not be controlled by an employer’s chartering arrangement, in
 
 Wallace v. Oceaneering Int’l,
 
 727 F.2d 427 (5th Cir.1984), the Court concluded that a commercial diver was a seaman although he was injured during his employment with a diving service contractor after being aboard a vessel for only a few days.
 

 | inMr. James Fister, II, the president of Coastal at the material time, attested that Mr. Becnel was employed as a day-cook/steward and a night cook with Coastal. Coastal provided personnel to a variety of customers on various types of installations and vessels, and Mr. Fister attested that Mr. Becnel maintained employment with Coastal for a total of one hundred fifty-three (153) days at seven (7) different job sites, and he worked with five (5) of Coastal’s customers.
 

 During his deposition, Mr. Becnel could not recall whether all of the work he performed for Coastal took place on some type of vessel or barge. However, he testified that during his tenure with Coastal, most of the work that he performed was on dive boats, with his work assignments varying between dive boats, drilling ships, and platforms. Mr. Deblieux of CMC attested that Mr. Becnel “was assigned to [a] vessel or identifiable fleet of vessels.”
 

 Further, while Mr. Becnel did not recall the owner or the name of the particular vessel to which he was assigned at the time of the incident, he testified that all of the vessels were used on a CMC project. Thus, Mr. Becnel alleged a connection to a fleet of vessels under common ownership or control.
 

 The record reveals evidence from which reasonable persons might draw conflicting inferences as to whether Mr. Becnel had an employment connection to an identifiable fleet of vessels. Therefore, we find that a genuine issue of material fact exists as to this issue.
 

 SUBSTANTIAL NATURE AND DURATION
 

 In their brief, Appellants state that “Coastal did not assign [Mr. Becnel] to
 
 any
 
 particular customer and posit that the disqualifying factor for Mr. Becnel’s | n Jones Act claim was the temporary and transitory nature of his employment. Specifically, Appellants aver that Mr. Becnel failed to establish that when he was working on a vessel and/or fleet of vessels under common ownership, that his stay on that vessel and/or group of vessels under common ownership was not temporary and was substantial in terms of duration.
 

 DURATION
 

 As to the duration of Mr. Becnel’s connection with the vessel and/or group of vessels, “[generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.”
 
 Chandris, 515 U.S.
 
 at 364, 115 S.Ct. at 2188. However, the Court stated, “[t]his figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.”
 
 Id.
 

 Appellants maintain that the issue of whether Mr. Becnel worked at least thirty percent (30%) of his employment with Coastal aboard vessels or identifiable fleet of vessels was not resolved by the trial court. Appellants suggest that because Mr. Becnel worked random assignments and was assigned to CMC vessels for less than 30% of his entire tenure with Coastal,
 
 *1009
 
 he does not qualify for Jones Act seaman status.
 

 In contrast, Appellee avers that Mr. Becnel meets the requisite test where his full employment with Coastal is taken into account. Appellees submit that the temporal element (duration) of the substantial connection test should be calculated | ^according to Mr. Becnel’s full employment history with Coastal rather than limiting that valuation to vessels owned and/or operated by one customer-CMC.
 

 In support of their argument, Appellants cite
 
 Brown v. Trinity Catering, Inc.
 
 06-5756, 2007 WL 4365384 (E.D.La. Dec. 11, 2007). In
 
 Brown,
 
 the plaintiff was employed by Trinity as a galley hand or cook, and was assigned to the M/V WOTAN, which was owned and operated by Manson Construction Co. (“Manson”).
 
 Id.
 
 In its analysis, the court went beyond the plaintiffs brief employment history with the defendant and examined the established employment patterns and practices of the plaintiffs employer.
 
 Id.
 
 Consequently, the court noted that, “given its documented practice of randomly assigning its employees to hundreds of vessels owned by more that [sic] two hundred different owners, it is highly unlikely that [the plaintiff] would have spent 30 percent of his time on a vessel or a group of vessels owned by Manson.”
 
 Id.
 
 The court thus found that the plaintiff was not a Jones Act seaman.
 

 We find
 
 Brown
 
 distinguishable from the matter
 
 sub judice.
 
 Brown only worked two hitches aboard a particular vessel during brief employment with Trinity.
 
 Id.
 
 Brown was injured at the end of his second hitch, and although he was assigned to a different vessel, he did not return to work the next assignment.
 
 Id.
 
 The court examined Trinity’s practices in adherence with the
 
 Chandris
 
 instruction that inquiry into plaintiffs seaman status should not be confined to a “snapshot” of Brown’s employment, however, the court recognized that “[c]onsidering the brevity of Brown’s employment by Trinity, a ‘snapshot’ ” was all that Brown had provided the court.
 

 |isln the matter before this Court, Mr. Fister attested to the following outline of Mr. Becnel’s employment history with Coastal:
 

 [[Image here]]
 

 Mr. Fister further attested to the following:
 

 • Coastal hired Mr. Becnel on December 9, 2005.
 

 • Mr. Becnel worked for Coastal from December 11, 2005, to August 20, 2006, when his employment with Coastal was terminated.
 

 
 *1010
 
 • Mr. Becnel was employed as a day-cook/steward and a night cook, and during his employment, Mr. Becnel worked a total of one hundred fifty-three (153) days at seven (7) different job sites for five (5) Coastal customers.
 

 In summation, Mr. Fister’s affidavit reflects that Mr. Becnel worked a total of 153 days on seven assignments. Two of those assignments were to CMC quarter barges-the affidavit lists one assignment to CMC for 28 days and a second assignment to CMC for seven days, totaling 35 days of Mr. Becnel’s 153 day employment tenure with Coastal.
 

 114Under Appellants’ line of reasoning, Mr. Becnel fails to meet the temporal element of the substantial connection test as he was assigned to CMC vessels 35 days of his 153-day employment with Coastal— twenty-three percent (23%) of his employment time. Appellant submits that this calculation fails to satisfy the 30% threshold requirement for time spent in service of an identifiable group of vessels.
 

 Mr. Becnel testified that he was injured aboard a CMC vessel. In contrast with Mr. Becnel’s testimony, Mr. Michael Portier testified that he was the supervisor in charge of the quarters barge and the quarters barge was not a CMC vessel.
 

 Mr. Ronald Gautreaux, a Coastal safety manager, testified that prior to the incident, 100% of Mr. Becnel’s time was spent on quarters barges. Mr. Gautreaux’s testimony competes with the information set forth in the affidavit of Coastal’s president, which lists assignments to alternating facility types such that even if the incident occurred at any point listed in the affidavit, at no point was every prior assignment (100%) to a quarters barge.
 

 The affidavit executed by Mr. Deblieux of CMC also disputes information set forth in Mr. Fister’s affidavit. Mr. Fister’s affidavit purports that Mr. Becnel was assigned to two (2) fixed platforms, while Mr. Deblieux’s affidavit states that, “[i]n his capacity as a steward/cook on CMC projects, Becnel was always assigned to some sort of vessel, rather than a platform, or land-based.”
 

 Thus, we find that the record bears out factual issues. Decision of these issues is ultimately determinative of the seaman status inquiry, and such | ^determination requires the weighing of evidence and the credibility of witnesses, which are improper considerations on a motion for summary judgment.
 

 We find that genuine issues of material fact exist as to the amount of time that Mr. Becnel spent in service of a vessel in navigation-less than 30% as SNIC and Coastal contend, or 30% as CMC contends. This precludes determination of whether Mr. Becnel’s connection to a vessel, or identifiable fleet of vessels, was substantial in terms of duration and nature sufficient to pass the second prong of the
 
 Chandris
 
 test.
 

 We further find that this threshold issue pretermits consideration of Appellants’ other assignments of error as to the trial court’s judgment on insurance coverage and penalty assessment issues. We remand the matter to the trial court for further proceedings consistent with this opinion.
 

 DECREE
 

 We find that genuine issues of material fact exist as to Mr. Becnel’s Jones Act seaman status. We find that this conclusion precludes further consideration of Appellants’ additional assignments of error. We reverse the trial court’s judgment and remand the matter for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED
 

 [1]
 

 . Chet Morrison Contractors, Inc. was incorrectly named "Chet Morrison, Inc.” in the original petition.