# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30727

_____

Lawrence Edwards,

*Plaintiff—Appellant*,

*versus*

Intermoor, Incorporated; Tidewater Marine, L.L.C.,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:23-CV-649

_____

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Lawrence Edwards was injured aboard the *M/V Pacific Duchess* during a particularly stormy night in the Gulf of Mexico. Edwards sued his employer and the purported owner of the vessel in Louisiana state court. The Defendants removed the case to federal district court on the basis of diversity jurisdiction, alleging Edwards fraudulently pled that he was a Jones Act seaman to keep his suit in state court. The district court agreed and denied

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30727

Edwards's motion for remand. Eventually, all claims were dismissed, and Edwards appeals. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2022, Edwards was injured while working as an anchor handler aboard the *M/V Pacific Duchess* off the coast of Veracruz, Mexico. In April 2023, Edwards filed suit in Louisiana state court against his employer, InterMoor, Inc., and the purported owner of the vessel, Tidewater Marine, LLC. He sued pursuant to the Jones Act, 46 U.S.C. § 30104, asserting claims under the Act, the Louisiana code, and general maritime law. Although maritime claims are usually within the exclusive admiralty jurisdiction of federal courts, "[t]he saving-to-suitors clause allows state courts to exercise concurrent jurisdiction over common-law claims arising in maritime contexts, including claims under the Jones Act." *In re Dutile*, 935 F.2d 61, 62 n.1 (5th Cir. 1991); 28 U.S.C. § 1333(1). Jones Act cases filed in state court are generally not removable to federal court. *In re Dutile*, 935 F.2d at 62; 28 U.S.C. § 1445(a). An exception applies, however, if a Jones Act claim has been fraudulently pled to prevent removal; "defendants may pierce the pleadings" to show such fraud. *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).

In May 2023, InterMoor removed this case to the United States District Court for the Western District of Louisiana invoking diversity jurisdiction under 28 U.S.C. § 1332 and alleging Edwards fraudulently pled his Jones Act status. As support, InterMoor attached an unsworn declaration from its Vice President and Edwards's work records. In response to Edwards's motion to remand, InterMoor provided more details on Edwards's work history. InterMoor explained that Edwards was paid for 324 days of work and was assigned as an onshore rigger for 187 of those days. The remaining 137 days were spent on offshore platforms and vessels. For 57 days, Edwards was

2

assigned to the ARGOS Project, an offshore platform with no related vessel work, with 12 days of stand-by and quarantine time.[1]  For 62 days, Edwards worked on the Exxon Hoover Project, with 11.5 days of onshore stand-by and quarantine time and 50.5 days abord the *M/V Skandi Skansen*.  For 18 days, Edwards was assigned to the Pacific Duchess Project, with 13 days of onshore quarantine and loading time and 5 days aboard the vessel.  In total, Edwards worked for 55.5 days (approximately 17 percent) of his employment aboard vessels, and 5 days (approximately 2 percent) of his employment specifically aboard the *M/V Pacific Duchess*.  According to InterMoor, there is no common ownership between the *M/V Skandi Skansen* and the *M/V Pacific Duchess*.  Edwards responded with an affidavit in which he stated he had "no reason to doubt the accuracy of the times and locations" listed in the work records InterMoor provided.

In June 2023, the district court referred Edwards's motion to remand to a magistrate judge.  The magistrate judge recommended the district court deny the motion.  As the magistrate judge explained, the Supreme Court established a two-part test to determine a worker's Jones Act seaman status: (1) "[t]he worker's duties must contribute to the function of the vessel or to the accomplishment of its mission"; and (2) "the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 376 (1995).  The Court approved of this circuit's 30 percent rule of thumb for the durational requirement: "A worker who spends

---

[1] Edwards filed an affidavit explaining that he worked as a rigger on the offshore platform, with duties similar to his onshore rigger work.  We have previously explained how the nature of that work does not count towards Jones Act seaman status because it "in no way 'contribut[es] to the function of the vessel or to the accomplishment of its mission.'" *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999) (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 357 (1995)).

less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. The magistrate judge found that Edwards's uncontested work history demonstrated he spent far less than 30 percent of his employment aboard a vessel. Further, the magistrate judge found that Edwards failed to rebut this showing with evidence that he underwent a substantial, permanent change in status, an exception to the 30 percent rule recognized in *Chandris* and our precedent. *Id.* at 372; *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389–90 (5th Cir. 2003). Thus, the magistrate judge recommended the district court deny Edwards's motion to remand because he fraudulently pled his Jones Act status. The district court adopted this recommendation over Edwards's objections.

In October 2023, the district court conducted a hearing on the case. Edwards's counsel informed the court he was no longer pursuing claims against Tidewater Marine, LLC. Accordingly, the district court granted its motion for summary judgment and dismissed it from the case.[2] The court also granted InterMoor's cross-motion for summary judgment because the denial of his Jones Act seaman status meant he could only seek relief from InterMoor through workers' compensation benefits. *See Chandris*, 515 U.S. at 355–56.

The district court dismissed the remaining parties and claims and entered final judgment. Edwards timely appealed.

_____

[2] In September 2023, Edwards filed an amended complaint substituting Tidewater Marine, LLC with Tidewater, Inc. and Tidewater Offshore Operations PTE Ltd. The complaint alleged Tidewater Offshore, a Singaporean entity, was the title holder of the *M/V Pacific Duchess* and a wholly owned subsidiary of Tidewater, Inc. These entities are not parties to this appeal.

## DISCUSSION

"We review both the denial of a motion to remand and the grant of summary judgment *de novo*." *Sanchez v. Smart Fabricators of Tex., LLC*, 997 F.3d 564, 568 (5th Cir. 2021) (*en banc*).  The determination of a worker's Jones Act seaman status "is a mixed question of law and fact [that] is usually inappropriate to take . . . from the jury." *In re Endeavor Marine, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000).  "Nevertheless, summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (alteration in original) (quotation marks and citation omitted).

Edwards raises five issues on appeal but does not contest the denial of his motion to remand.  One issue concerns the effect of a recently filed *in rem* action between Edwards and the *M/V Pacific Duchess* on this case.  That issue, however, is not developed in his brief and is therefore forfeited.  *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).  Two other issues challenge the district court's reliance on Fifth Circuit case law instead of "Louisiana maritime law."  The fourth issue disputes the district court's refusal to certify a question to the Louisiana Supreme Court.  The fifth issue concerns the denial of Edwards's motion for summary judgment against InterMoor as his Jones Act employer.  That issue depends on whether the district court erred in concluding Edwards is not a Jones Act seaman.

Edwards argues that the district court should have applied "Louisiana maritime law" because this is a "saving-to-suitors" case filed in Louisiana state court and removed on the basis of diversity jurisdiction.  Long ago, the Supreme Court "held that the Jones Act is to have a uniform application throughout the country unaffected by 'local views of common law rules.'" *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 244 (1942) (quoting *Panama R. Co. v. Johnson*, 264 U.S. 375, 392 (1924)).  "This uniformity requirement extends to the type of proof necessary for judgment." *Id.*  Thus, even when

the district court's jurisdiction is based on diversity, federal maritime law controls. *See Pope & Talbot v. Hawn*, 346 U.S. 406, 409–11, 411 n.5 (1953). *Erie* and related doctrines are simply inapplicable. *Id.*

Although Edwards relies on authority that the Jones Act does not preempt Louisiana's *forum non conveniens* doctrine, the determinative factor was that "the doctrine is one of procedure rather than substance." *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). Jones Act seaman status, by contrast, is substantive law, and the Jones Act "establishes a uniform federal law that state as well as federal courts must apply to the determination of employer liability to seamen." *Id.* at 455.

Here, the magistrate judge appropriately applied federal law to determine Edwards's Jones Act seaman status under the Supreme Court's *Chandris* test. The magistrate judge cited one of this court's precedents, stating it "exhaustively outlined" the law under *Chandris*. *See Becker*, 335 F.3d at 387–90. Contrary to Edwards's arguments, there is no question of Louisiana law to certify to the state's supreme court. The district court did not err in refusing to do so. *See* La. Sup. Ct. R. XII.

Though federal law applies, we consider the "Louisiana maritime law" that Edwards urges us to apply. *See Wisner v. Pro. Divers of New Orleans*, 731 So.2d 200 (La. 1999). The Louisiana Supreme Court held that a commercial diver was a Jones Act seaman under the substantial connection step of the *Chandris* test. *Id.* at 205. The court considered both elements of the substantial connection requirement after an extensive review of the United States Supreme Court's and this court's then-existing precedents. *Id.* at 202–05. The durational requirement was satisfied because Wisner spent "ninety percent of his work-life with" his employer aboard a vessel. *Id.* at 205. The court determined the nature of Wisner's connection to vessels in navigation was substantial because "Wisner faced regular exposure to the

perils of the sea." *Id.* at 202, 204–05. Edwards relies on this second conclusion to make a "perils of the sea" argument for Jones Act seaman status.

*Wisner* offers Edwards no help here. First, the district court was required to follow the Supreme Court's interpretations of federal law on seaman's status, as well as our own. *See Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 377–78 (5th Cir. 2001); *Little v. Amoco Prod. Co.*, 734 So.2d 933, 938 (La. Ct. App. 1999). The *Chandris* Court was clear that "[s]eaman status is not coextensive with seamen's risks" and therefore "[s]ome workers who unmistakably confront the perils of the sea, often in extreme form, are . . . left out of the seamen's protections." 515 U.S. at 361–62 (citation omitted); *see also Sanchez*, 997 F.3d at 574. Thus, if there is "any disagreement between the application in *Wisner* and the test adopted in *Chandris* . . . , the test enunciated in the latter controls." *Roberts*, 266 F.3d at 377.

Second, Louisiana courts have limited *Wisner*'s holding to "divers and other workers whose duties may be classified as classical seaman's work." *Little*, 734 So.2d at 938. Borrowing language from one of this court's pre-*Chandris* decisions that also considered commercial divers, *Wisner* explained, "[a] diver's work *necessarily* involves exposure to numerous marine perils, and is *inherently* maritime because it cannot be done on land. *It is not, like so many offshore field occupations, an art developed in land work and transposed to a maritime setting.*" 731 So.2d at 204 (second and third emphasis added) (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 436 (5th Cir. 1984)); *Little*, 734 So.2d at 938. Although we have referred to anchor handlers as "traditional maritime workers" in the past, the vast majority of Edwards's employment was as an onshore rigger. *St. Romain v. Indus. Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 380 (5th Cir. 2000).

Third, and most importantly, "[i]t is not the employee's particular job that is determinative, but the employee's connection to a vessel." *Chandris*,

515 U.S. at 364 (alteration in original) (citation omitted). Wisner satisfied the durational requirement of *Chandris*'s second prong because he spent 90 percent of his employment aboard a vessel. *Wisner*, 731 So.2d at 205. The uncontroverted record evidence shows that Edwards cannot meet this requirement and therefore lacks the "temporal connection to vessels in navigation" required for Jones Act seaman status. *Chandris*, 515 U.S. at 371.

After briefing was concluded, Edwards informed the court of a new Fifth Circuit opinion. *See Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800 (5th Cir. 2024). The court concluded there were fact issues on whether that plaintiff, Santee, was a seaman. On the duration issue that we find to be dispositive here, the court found there to be a fact issue because Santee claimed "he never had an end date to his assignment" to the vessel on which he was injured. *Id.* at 807. Consequently, the evidence supported that "Santee's assignment was not a discrete, transient job" that would necessarily prevent his being a seaman. *Id.* This new opinion does not alter our ruling here.

Even if he cannot meet the 30 percent rule of thumb, Edwards argues his assignment to the *M/V Pacific Duchess* was a new assignment that qualifies for *Chandris*'s change-in-status exception. Critically, though, Edwards does not explain how his assignment as an anchor handler was "a new work assignment in which his essential duties are changed" from his previous onshore and offshore work. *Id.* at 372. Similarly, Edwards does not explain how this assignment was a "substantial change in status" because "merely serving an assignment on a vessel in navigation does not alter a worker's status." *Becker*, 335 F.3d at 389–90. His extensive quotation of nonbinding decisions, including one that explicitly refused to address this issue, does not cure this deficiency. *See Zertuche v. Great Lakes Dredge & Dock Co.*, 306 F. App'x 93, 95–98 (5th Cir. 2009).

AFFIRMED.